**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DEWANA WATTS**                                                                **PLAINTIFF**


**VS**                                                    **CIVIL ACTION NO.  3:25-cv-179-KHJ-MTP**



**BLUE BELL CREAMERIES, L.P.**                                          **DEFENDANT**


## COMPLAINT

COMES NOW, Plaintiff, DeWana Watts, by and through undersigned counsel, hereby brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and 42 U.S.C.§1981 ("Section 1981") against Blue Bell Creameries, L.P., for race discrimination,  hostile work environment and retaliation.

## JURISDICTION AND VENUE

1.   This court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331 (federal question), to hear federal claims pursuant to Title VII, and Section 1981.

2.   Venue is proper in this judicial district under 42 U.S.C. § 2000 (e) – (e)(5)(f)(3) as Ms. Watts was employed by Blue Bell Ice Creameries, L.P. at its location in the Byram, Mississippi area at the time of the discrimination complained of, and the incidents and decisions adverse to Plaintiff's employment that are subject of this civil action were made in this judicial district.



## PARTIES

3. Ms. Dewana Watts ("Plaintiff or Ms. Watts") is an African American adult female, a citizen of the United States, and resident of the state of Mississippi. At all times relevant to this suit, she was employed with Blue Bell Ice Creameries, L.P. in Byram, MS.

4. That the Defendants, Blue Bell Ice Creameries, L.P. hereinafter to as "Blue Bell Creameries" or "Defendants," is a Delaware corporation doing business in Mississippi, whose registered agent is C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232, who at all times relevant to this lawsuit owned and/or managed the premises known as Blue Bell Creameries in Byram, MS in Hinds County, Mississippi.

## FACTS COMMON TO ALL COUNTS

5. The Defendants hired Ms. Watts as an office clerk on or about April 11, 2022. After another black female office manager was terminated, Ms. Watts moved into the Office manager position in February 2023.

6. In November 2022, after Kentrice Anderson, the previous office manager was fired. Tim McLaurin, Ms. Watts' white male supervisor, would make comments about Ms. Anderson saying he got rid of her because she was "too ghetto."

7. Throughout Ms. Watts' employment, she faced several instances of harassment. Soon after Ms. Watts was promoted to office manager, Brian Wright, a white male employee threw a box towards her. He was reported to Human resources. Mr. Wright was not disciplined but he later resigned.

8. However, a white female employee believed to be Mr. Wright's wife confronted Ms. Watts about the situation. Ms. Watts spoke to Tim McLaurin, her supervisor, about Brian Wrights' wife approaching her. Mr. McLaurin merely stated that he would speak to Mrs. Wright.

9. Around April or May 2023, a customer with Blue Bell Creameries called in. During

the conversation with Ms. Watts, the customer stated, "that's why I don't like dealing with niggers." Ms. Watts reported this incident to Mr. McLaurin. He laughed and said, "that's just how people are."

10. Following this incident, Mr. McLaurin told Ms. Watts she should not answer the phones despite it being one of her job duties. He stated that it was getting on Andy Lambert's, white male Regional Manager, nerves. The new white office clerk was instructed to answer the phones instead. Ms. Watts reported this incident to Human Resources and nothing was done.

11.  Mr. McLaurin had hired Elizabeth Cosby, a white female as an office clerk in June. 2023. Ms. Cosby was provided full training for her position. Ms. Watts had never received full training.

12. Prior to hiring Ms. Cosby, Mr. McLaurin kept separate piles of applications on Ms. Watts's desk. Applications with black sounding names, schools, or areas were rejected. There was a "Maybe" pile for those McLaurin was unsure about. White sounding names, schools, or areas were deemed the "Keep" pile.

 13. Ms. Watts continued to experience different treatment than her white colleague. She would be called to come to work when Ms. Cosby would not have to come to work. Though Mr. McLaurin was Ms. Watts supervisor, he would often require her to report to Ms. Cosby. Ms. Watts contacted Human Resources about these incidents.

14.  In November 2023, Ms. Watts spoke to Jimmy Lawhorn about her treatment and how it was affecting her. Mr. Lawhorn scheduled a meeting with the managers and Human Resources. Only Mr. Lambert and Mr. McLaurin attended, and nothing improved.

15. About the same time in November 2023, Mr. Lambert remarked to Ms. Watts that he

had heard that she was calling HR. He told her, "I am glad you are confident enough to use that tool. Keep using it. But if you have a problem, come to me."

16. Around early June 2024, Ms. Watts received approval for paid time off (PTO) for a vacation. On June 28, 2024, Ms. Watts returned to work and learned that her PTO was taken from her. She had been delayed returning home because she had an ankle injury while on vacation. Betty Flaggins told Ms. Watts that her PTO had been taken because Ms. Watts would have had to have been back to work on Wednesday at 8am. Ms. Watts was never informed of this or that her PTO would be taken. The PTO was put back on the next pay period. Ms. Watts also reported this incident to Human Resources.

17. In late July or early August 2024, Mr. McLaurin stated that he was taking an early retirement. He began training Mr. Mark Magnum, a white male, for the position. Ms. Watts overheard McLaurin tell Magnum "That bitch has to go before I go, and you won't have to deal with her.'

18.  On or about November 22, 2024, Ms. Watts had medical issues and called in to ask if she could have the day off. She was schedule to work Saturday and also wanted to avoid being in overtime status. Mr. McLaurin told Ms. Watts not to come in.

19. On or about November 25, 2024, Ms. Watts was still experiencing medical issues. Before Ms. Watts began her shift, she called Mr. McLaurin to request that day off. Mr. McLaurin told her to come in, as he had to check with Human Resources first. Ms. Watts came to work and met with Mr. McLaurin and Mr. Lambert, advising them that she was still not feeling well.

20. Ms. Watts' medical issue continued to affect her, and she had to leave work. She

informed Ms. Cosby that she had to go. Mr. McLaurin terminated Ms. Watts that day, falsely claiming she had abandoned her job. Upon information and belief Ms. Cosby was given Ms. Watts' position.

21. The termination took place approximately two weeks prior to when Ms. Watts would have received her bonus. Upon information and belief, Ms. Andreson was also terminated approximately two weeks prior to when she would have received her bonus.

22. On or about November 27, 2024, Ms. Watts contacted the EEOC and filed a charge of discrimination against the Defendant. See Ex. A

23. On or about December 17, 2024, Ms. Watts received her right to sue letter and timely files this lawsuit.

**COUNT I**
**DISCRIMINATION BASED ON RACE**
**IN VIOLATION OF TITLE VII THE CIVIL RIGHTS ACT**

24. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

25. Title VII makes it unlawful practice to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

26. Defendant discriminated against Ms. Watts and applied a racially biased double standard towards Ms. Watts in several ways.

27. For example, Defendant discriminated against Ms. Watts, including but not limited not appropriately addressing Ms. Watts being referred to "a nigger" by a customer, providing training to Ms. Watts' white female colleague but not fully training Ms. Watts, requiring her to

report to her white female subordinate transferring her job duties to her white female subordinate and failing to address complaints of disparate treatment made to HR.

28. Defendant then terminated Ms. Watts and replaced her with a white female.

29. As a direct, legal, and proximate result of Defendants' unlawful discrimination. Ms. Watts suffered emotional distress, economic damages, and other damages.

## COUNT II
## 42 U.S.C. § 1981 RACIAL DISCRIMINATION

30. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

31. As stated herein, the Defendants continued in their discriminatory practices in the form of not appropriately addressing Ms. Watts being referred to as "a nigger" by a customer, providing training to Ms. Watts white female colleague but not fully training her. Requiring her to report to her white female subordinate transferring her job duties to her white female subordinate and failing to address complaints of disparate treatment made to Human Resources and terminating her and replacing her with a white colleague. Defendant's actions, as described above, constitute conduct made because of race and is illegal race discrimination in violation of 42 U.S.C. § 1981a.

32. Pursuant to 42 U.S.C. § 1981a, Defendants' conduct constitutes as intentional discrimination based on race, which is considered disparate treatment and is strictly prohibited.

33. As a direct, legal, and proximate result of Defendant's unlawful discrimination Ms. Watts has suffered emotional distress, economic damages, and other damages.

## COUNT III
## HOSTILE WORK ENVIRONMENT

34. Plaintiff incorporates by reference each and every allegation as set forth above.

35. Title VII of the Civil Rights Act of 1964 as amended prohibits employment discrimination based on an employee's race, color, religion, sex, or national origin. Defendants

subjected Ms. Watts to a continuous and pervasive hostile work environment based on her race.

36. The Defendants ignored Ms. Watts' numerous complaints about mistreatment and harassment and allowed her supervisors to continue their pattern of conduct towards her. The Defendant even attempted to intimidate Ms. Watts about making her Human Resources Complaints.

37. Defendants knew or should have known of the harassment and disparate treatment against Ms. Watts and not only refused to address it but also ultimately terminated her.

38. All of Defendant's actions and/or inaction caused Ms. Watts humiliation and left her in fear of additional harassment, bullying, and retaliation.

39. As a direct, legal, and proximate result of Defendant's unlawful actions, Ms. Watts has suffered humiliation, severe emotional distress, economic damages, and other damages.

## COUNT IV
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT

40. Plaintiff incorporates by reference each and every allegation as set forth above.

41. Title VII protects individuals against retaliation for filing charges of discrimination, participating in an investigation or reporting and opposing discriminatory practices.

42. Ms. Watts reported several incidents of discrimination and harassment by her supervisor and others to Human Resources.

43. Ms. Watts' supervisors knew of her reports. One supervisor and even stated that he was "glad she was confident enough to use that tool." Another stated, "That bitch has to go before I go." Ms. Watts supervisors continued to intimidate and harass Ms. Watts by engaging additional discrimination, interfering with her PTO, and ultimately firing her.

44. As a direct, legal, and proximate result of Defendants' unlawful discrimination actions,

Ms. James has suffered severe humiliation, emotional distress, lost wages, economic damages, and other consequential damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Mississippi.

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law;

H.    An award of punitive damages; and

I.      Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury.

Dated this the14[th] day of March 2025.

Respectfully submitted,
DEWANA WATTS

.

/s/ Darrian A. Denman

OF COUNSEL:

DARRIAN A. DENMAN, MSB# (105159)
The Denman Law Firm, PLLC
4780 I-55 North, Suite 100
Jackson, MS 39211
Tel: (601) 899-0141
Fax: (601) 586-7824
dadenman@denman-law.com