UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DEWANA WATTS                                                    PLAINTIFF

V.                              CIVIL ACTION NO. 3:25-CV-179-KHJ-MTP

BLUE BELL CREAMERIES, L.P.                                     DEFENDANT

ORDER

Before the Court is Defendant Blue Bell Creameries, L.P.'s ("Blue Bell") [13]

Motion to Dismiss. For the reasons below, the Court denies the [13] Motion.

I.      Background

This case arises out of Plaintiff DeWana Watts's ("Watts") employment at

Blue Bell from April 2022 to November 2024. Watts says she faced several instances

of harassment at Blue Bell. Am. Compl. [12] ¶ 7. In sum, she alleges Blue Bell

treated her differently from her white colleague, failed to properly address two

aggressive incidents, engaged in racially motivated hiring and firing procedures,

and wrongfully terminated her. *Id.* ¶¶ 6–21.

Blue Bell hired Watts as an office clerk in April 2022 and promoted her to

office manager in February 2023. *Id.* ¶ 5. Watts heard her supervisor, Tim

McLaurin ("McLaurin"), say that he fired the previous office manager because she

was "too ghetto." *Id.* ¶ 6.

Soon after Watts's promotion, a white male employee threw a box at her. *Id.*

¶ 7. The employee's wife—who also worked at Blue Bell—later confronted Watts

about the box-throwing incident. *Id.* ¶ 8. Watts spoke to McLaurin about this confrontation, and McLaurin said he would speak to the employee's wife. *Id.* Blue Bell never disciplined the male employee. *Id.* ¶ 7.

After Watts's promotion to office manager, Blue Bell began searching for a new office clerk. During this hiring process, Watts says McLaurin automatically rejected applications with "black sounding names, schools, or areas." *Id.* ¶ 12. He eventually hired Elizabeth Cosby ("Cosby"), a white female, as an office clerk in June 2023. *Id.* ¶ 11.

Around this same time, a customer called Watts a racial slur over the phone. *Id.* ¶ 9. When Watts reported the incident to McLaurin, he laughed and said, "That's just how people are." *Id.* After the incident, McLaurin told Watts not to answer the phones anymore because it was getting on the regional manager's nerves. *Id.* ¶ 10. Instead, he instructed Cosby to answer the phones. *Id.*

McLaurin often required Watts to report to Cosby even though Cosby was Watts's subordinate. *Id.* ¶ 13. And Blue Bell made Watts come to work when Cosby did not have to. *Id.* Watts reported these instances to Human Resources and eventually met with the regional manager and McLaurin. *Id.* ¶¶ 13–14. But nothing improved after the meeting. *Id.* ¶ 14.

In June 2024, Watts received approval for paid time off ("PTO") for a vacation. *Id.* ¶ 17. She delayed returning home from the vacation (and therefore returning to work) because of an ankle injury. *Id.* When she returned to work, she learned that her PTO had been taken because she did not return to work as

planned. *Id.* ¶ 18. But the PTO was put back on the next pay period. *Id.* Watts reported this incident to Human Resources. *Id.*

About five months later, Watts requested the day off because of medical issues. *Id.* ¶ 20. McLaurin told her not to come in that day. *Id.* Her medical issues persisted, so she requested another day off. *Id.* ¶ 21. This time, McLaurin told her to come to work because he had to check with Human Resources before giving her another day off. *Id.* So Watts came to work but had to leave early because of the medical issues. *Id.* ¶¶ 21–22. Later that day, McLaurin terminated her. *Id.* ¶ 22.

A few days later, Watts filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter. *Id.* ¶¶ 24–25. So she sued Blue Bell for (1) Title VII race discrimination, (2) Section 1981 race discrimination, (3) Title VII hostile work environment, and (4) Title VII retaliation. *Id.* ¶¶ 26–46. Blue Bell now moves to dismiss. *See* Mot. to Dismiss [13].

II.     Standard

In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation modified). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). The plausibility standard does not ask for

a probability of unlawful conduct but does require more than a "sheer possibility." *Id.* The Court must accept all factual allegations in the complaint as true, but it is not bound to accept legal conclusions, conclusory statements, or bare assertions without factual support. *Id.*

## III.    Analysis

Blue Bell asks the Court to dismiss this case because Watts fails to state a claim for which relief can be granted. *See* [13]. But the Court disagrees.

### A.  Title VII and Section 1981 Race Discrimination

Watts has stated a claim for Title VII and Section 1981 race discrimination.

Title VII prohibits an employer from discriminating against any individual on the basis of race. 42 U.S.C. § 2000e-2(a)(1). And Section 1981 bars race discrimination in contracting. 42 U.S.C. § 1981(a); *see also Perry v. VHS San Antonio Partners, LLC*, 990 F.3d 918, 931 (5th Cir. 2021). Because "[t]he analysis of discrimination claims under [Section] 1981 is identical to the analysis of Title VII claims," the Court will analyze them together. *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 n.5 (5th Cir. 2023) (citation modified); *see also Ford v. Wal-Mart Stores E., LP*, No. 1:21-CV-13-SA-DAS, 2022 WL 3040627, at *4 (N.D. Miss. Aug. 1, 2022).

To plead a race discrimination claim under Title VII and Section 1981, Watts must allege "(1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citation modified). "[T]o plead an adverse employment action, a

plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dall. Cnty.,* 79 F.4th 494, 502–03 (5th Cir. 2023).

Watts does not have to meet the *McDonnell Douglas* evidentiary standard at this stage. But since she alleges only circumstantial evidence of discrimination, it may help to refer to *McDonnell Douglas* "to understand whether [Watts] has sufficiently pleaded an adverse employment action taken '*because of*' [her] protected status." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (emphasis in original) (quoting *Cicalese*, 924 F.3d at 767). To establish a prima facie case of race discrimination under the *McDonnel Douglas* standard, Watts must show she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024).

The parties agree that Watts's termination was an adverse employment action. *See* [14] at 11; [16] at 8–9. And the fact that Blue Bell replaced Watts with a white woman is enough to state a claim for race discrimination at this stage. *See Ayorinde*, 121 F.4th at 507; *see also Haskins v. Nicholson*, 900 F. Supp. 2d 712, 727 (S.D. Miss. 2012) (plaintiff established a prima facie claim of race discrimination by showing he was replaced by a white man). Thus, Watts has stated a claim for race discrimination based on her termination.

Watts also says Blue Bell discriminated against her by "requiring her to report to her white female subordinate[,] transferring her job duties to her white

female subordinate through late 2024[,] and failing to address the numerous complaints of disparate treatment she made to Human Resources through late 2024." [12] ¶ 28. Blue Bell responds to these facts as if they allege additional adverse employment actions. *See* [14] at 13. But Watts does not clarify whether these facts establish timely and independent adverse employment actions or serve only as evidence to support the overall theory of race discrimination in her termination. Still, Watts has stated a claim for race discrimination under Title VII and Section 1981 based on her termination. So the Court denies the [13] Motion as to these claims.

### B.  Title VII Hostile Work Environment

Watts has also stated a claim for Title VII hostile work environment.

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116). To state a claim for hostile work environment under Title VII, Watts must allege that:

> (1) [she] belongs to a protected group; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) [her] employer knew or should have known of the harassment and failed to take prompt remedial action.

*EEOC v. WC&M Enterps., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

Title VII claims must be filed within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). But hostile-work-

environment claims are unique because "they involve repeated conduct, so the unlawful employment practice cannot be said to occur on any particular day." *Heath v. Bd. of Supervisors for S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) (citation modified). Therefore, these claims are subject to the continuing violation doctrine, meaning if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

Since Watts filed her EEOC charge on November 27, 2024, acts before May 31, 2024, are outside the 180-day window. [12] ¶ 24. When specifically addressing this hostile-work-environment claim, Watts does not point the Court to a particular timely act that contributed to the alleged harassment. *See* [12] ¶¶ 36–41; *see also* [16] at 6–7. She says Blue Bell "ignored [her] numerous complaints about mistreatment and harassment and allowed her supervisors to continue their pattern of conduct towards her through the date of her termination." *Id.* ¶ 38. This statement is too conclusory to establish a hostile work environment. And her [16] Response does not provide clarity on which timely acts contributed to the hostile work environment.

But reading the [12] Amended Complaint in the light most favorable to Watts, the Court parses out a few acts that plausibly occurred within the relevant period. For example, in October 2024, Watts overheard McLaurin complain about her calls to Human Resources and state "[t]hat bitch has to go." [12] ¶ 19. This statement could have been related to some of Watts's race-discrimination reports to

7

Human Resources. So the Court will apply the continuing violation doctrine to determine whether all the allegations together establish a hostile work environment.

The Court finds Watts has pleaded facts that plausibly show a hostile work environment. Although Watts's [12] Amended Complaint contains several conclusory allegations and bare assertions,[1] she has pleaded enough facts to "nudge the claim across the line from conceivable to plausible." *Olivarez*, 997 F.3d at 600 (citation modified). She says McLaurin laughed at and did not properly respond to a customer calling Watts a racial slur, told Watts to let Cosby answer the phone instead of her, rejected job applications with "black sounding names, schools, or areas,"[2] required Watts to report to Cosby even though Cosby was Watts's subordinate, complained about Watts calling Human Resources, and told someone "[t]hat bitch has to go" in reference to Watts. [12] ¶¶ 9–10, 12–13, 19. And she claims no one disciplined the white employee who threw a box towards her. *Id.* ¶ 7.

Blue Bell says that "Watts may show an uncomfortable or uncivil work environment, but she does not show unwelcome harassment supporting a Title VII claim." [14] at 7. This may be true under the summary judgment standard. But at

---

[1] For example, Watts claims she called Human Resources "almost daily to report harassment and discrimination." *Id.* This statement is conclusory. And "frequently complaining about something does not mean it happened frequently." *West v. City of Houston, Tex.*, 960 F.3d 736, 742 (5th Cir. 2020).

[2] "[H]arassment does not have to be directed toward the plaintiff to be considered for a hostile-work-environment claim." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 502 (5th Cir. 2009) (citation modified). So even though Watts does not allege McLaurin used this race-based hiring system against her, the practice can still contribute to a hostile work environment.

the motion-to-dismiss stage, Watts need only establish a "facial plausibility" that Blue Bell created a hostile work environment. *See Iqbal*, 556 U.S. at 678. She has done so.

### C.  Title VII Retaliation

Watts has stated a claim for retaliation under Title VII.

To establish Title VII retaliation, Watts must allege that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). All Watts must do to survive the [13] Motion is "allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Id.* (quoting *Cicalese*, 924 F.3d at 768).

#### 1.  Protected Activity

Under Title VII, an employee engages in protected activity if she has either "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)).

Watts says she engaged in protected activity by reporting "several incidents of discrimination and harassment by her supervisor and others" to Human Resources. [12] ¶ 44; *see also* [16] at 8. Not every communication between an employee and Human Resources is protected activity under Title VII, but reports

about racial discrimination are. *See e.g.*, *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 306 (5th Cir. 2020).

Reading the [12] Amended Complaint in the light most favorable to Watts, the Court finds that the following Human Resources reports might relate to race discrimination: McLaurin instructing Watts to stop answering the phone in June 2023 and McLaurin requiring her to "report" to Cosby at an unspecified time. [12] ¶¶ 9–10, 13. Also, the Human Resources meeting with Watts, the regional manager, and McLaurin in November 2023 could have been related to race-discrimination complaints. *Id.* ¶ 14. But Watts does not allege that her June 2024 report to Human Resources regarding the PTO incident had anything to do with race discrimination. *See id.* ¶ 18. And she does not sufficiently plead that she engaged in protected activity by making the conclusory allegation that she called Human Resources "almost daily to report harassment and discrimination by Mr. McLaurin" around June 2024. *Id.* ¶ 16.

In sum, not all of Watts's communications with Human Resources qualify as protected activity under Title VII. But at least the June 2023 report and November 2023 meeting could be based on race discrimination.

### 2.  Adverse Employment Action

Blue Bell admits that Watts's termination was an adverse employment action. [14] at 11.

10

3. Causal Connection

To establish the causation prong of a retaliation claim, Watts must "demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).

Blue Bell argues that too much time passed between Watts's race-discrimination complaints and her termination for the two to be causally connected. [14] at 12. Watts's protected communications with Human Resources occurred in June and November 2023. [12] ¶¶ 9, 14. And Blue Bell did not fire Watts until November 25, 2024, more than a year later. *Id.* ¶ 21–22.

The Fifth Circuit has established that "a five month lapse is not close enough, without other evidence of retaliation, to establish the 'causal connection' element of a prima facie case of retaliation." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020); *see also Thornton v. Univ. of Tex. Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, *4 (5th Cir. Feb. 26, 2025) ("[w]ithout additional support," six months was "too great a lapse in time to plead causation by temporal proximity" in a Title VII retaliation case).

But Watts does not rely on temporal proximity alone—she also says in October 2024, she overheard McLaurin complain about her calls to Human Resources and state "[t]hat bitch has to go." [12] ¶¶ 19, 45. Even though this occurred 11 months after Watts's most recent protected activity, it is plausible that McLaurin's direct reference to Watts's Human Resources complaints included those that are protected under Title VII. There is thus a plausible causal connection

11

between Watts's protected reports and her termination. So the Court denies the [13]

Motion as to this claim.

IV.    Conclusion

For the reasons stated above, the Court DENIES the [13] Motion to Dismiss.

In doing so, the Court has considered all the parties' arguments. Those arguments

not addressed would not have altered the Court's decision.

SO ORDERED, this 2nd day of March, 2026.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE